**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| VITO P. PAPARIELLO, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 21-314 |
| v. | ) | |
| | ) | |
| ABSOLUTE RESOLUTIONS | ) | |
| INVESTMENTS, LLC, | ) | |
| | | |
| Defendant. | | |

## MEMORANDUM OPINION

Presently before the Court is the Motion for Summary Judgment filed by Defendant Absolute Resolutions Investments, LLC ("Absolute"). (Docket No. 45). The Court has considered the motion, Absolute's concise statement of material facts and supporting memorandum of law, Plaintiff Vito P. Papariello's ("Papariello") Objections to Purported Evidence and Affidavits in Defendant's Motion for Summary Judgment (45) Pursuant to Fed. R. Civ. P. 56 (Docket No. 56), and Absolute's Reply Brief (Docket No. 57). For the reasons explained herein, Absolute's motion for summary judgment is granted.

**I.   Background**

Papariello's Complaint alleges that Absolute violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692-1692p. (Docket No. 1, ¶ 1). Papariello avers that he discovered the FDCPA violations alleged in his Complaint when he reviewed his Equifax and TransUnion consumer reports on "Credit Karma"[1] and "observed a trade line" from Absolute showing a debt in his name for $23,960 originally owed to "12 WEBBANK." (*Id.* ¶¶ 32-39). Papariello alleges

---

[1]     Papariello described Credit Karma as offering consumers free credit scores, reports, and insights on its website. (Docket No. 1, ¶ 34).

he had not procured such a debt, and he further alleges that Absolute falsely reported to consumer reporting agencies ("CRAs") that he had opened such a debt on April 13, 2017.  (*Id.* ¶¶ 38-39). Papariello claims that Absolute knew or should have known that the information it provided to the CRAs was false, and that Absolute made such false representations to collect or attempt to collect the debt.  (*Id.* ¶¶ 40-41).

Papariello brought four counts wherein he argues Absolute's misrepresentations of the debt violate: (1) 15 U.S.C. § 1692e(2) (using false, deceptive, or misleading representations or means in connection with the collection or attempted collection of a debt); (2) Section 1692(e)(8) (communicating or threatening to communicate credit information that is known or should be known to be false in the connection with the collection of a debt); (3) Section 1692e(10) (using any false representation or deceptive means to collect any debt or to obtain information concerning a consumer); and (4) Section 1692f(1) (using unfair or unconscionable means to attempt to collect a debt including by attempting to collect an amount that is not expressly authorized by the agreement that created a debt or that is not permitted by law).  (*Id.* ¶¶ 54-69).  Papariello demands a jury trial and judgment against Absolute for actual damages under Section 1692k(a)(1), the maximum amount of statutory damages permitted under Section 1692k(a)(2), costs and attorney's fees under Section 1692k(a)(3), and other just and proper relief.  (*Id.* ¶ 70a-d).

The parties have engaged in discovery which—pursuant to the Court's June 4, 2021, Order—was due to be completed by November 1, 2021.  (Docket Nos. 19, 42).[2]  After the November 1st deadline, Absolute served an untimely subpoena on Wells Fargo Bank N.A., and the Court sustained Papariello's objection thereto.  (Docket No. 42).  At that time, the Court also

---

[2]    The parties also engaged in arbitration during this time pursuant to the ADR requirement of the District Court, and an arbitration award was entered on September 3, 2021.  (Docket No. 30).  Papariello thereafter demanded a trial *de novo*.  (*Id.*).

set a briefing schedule for summary judgment motions.  (Docket No. 43).  Absolute timely filed

its motion for summary judgment.  (Docket No. 45).  Papariello filed Objections to Purported

Evidence and Affidavits in Defendant's Motion for Summary Judgment [45] Pursuant to Fed. R.

Civ. P. 56 (Docket No. 56).[3]  Absolute filed its reply brief on June 13, 2022 (Docket No. 57);

accordingly, Absolute's motion is fully briefed and ripe for disposition.

## II.    **Standard of Review**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Material facts are those "that might affect the

outcome of the suit under the governing law."  *Boyle v. Cnty. of Allegheny Pennsylvania*, 139 F.3d

386, 393 (3d Cir. 1998) (quoting *Anderson*, 477 U.S. at 247-48).  A dispute pertaining to such a

fact is "'genuine' if a reasonable jury could possibly hold in the nonmovant's favor with regard to

that issue."  *Id.* (quoting *Anderson*, 477 U.S. at 247-48).  "[T]he mere existence of *some* alleged

factual dispute between the parties will not defeat an otherwise properly supported motion for

summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson*,

477 U.S. at 247-48.

---

[3]    When the Court originally set the briefing schedule for motions for summary judgment in this matter, it ordered that the parties file motions for summary judgment by April 4, 2022; file all responses thereto no later than May 2, 2022; and, finally, file all replies no later than May 16, 2022.  (Docket No. 43).  On April 29, 2022, Papariello moved to extend his time to oppose Absolute's motion.  (Docket No. 48).  The Court permitted Papariello to file any response to Absolute's motion by May 16, 2022.  (Docket No. 50).  After that, Papariello filed a Notice of Defendant's [Amended] Motion for Summary Judgment and Intent to Respond in Opposition (Docket No. 53) wherein he indicated that he interpreted Absolute's errata entry on May 9, 2022 (Docket No. 51) to be an amendment of Absolute's motion for summary judgment and intended to file an opposition thereto by June 8, 2022 (30 days later).  However, the Court clarified that Absolute's errata entry at Docket No. 51 was "an errata and not an amendment to [Absolute's] Appendix and Exhibits filed at Docket No. 47-1."  (Docket No. 55).  The Court further explained that Papariello's response to Absolute's motion for summary judgment remained due by May 16, 2022, as ordered at Docket No. 50.  (*Id.*).

The movant for summary judgment has the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("*Catrett*"). Once the movant has carried its initial burden, "the nonmoving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact"; rather, "[the nonmoving party] 'must make a showing sufficient to establish the existence of every element essential to his case[.]'" *Pastore v. Bell Tel. Co. of Pennsylvania*, 24 F.3d 508, 511 (3d Cir. 1994) (quoting *Harter v. GAF Corp.*, 967 F.2d 846, 852 (3d Cir. 1992)); *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) ("In this respect, summary judgment is essentially 'put up or shut up' time for the non-moving party" (quoting *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109–10 (3d Cir. 1985)). And "if the non-moving party has the burden of proof at trial, that party must set forth facts 'sufficient to establish the existence of an element essential to that party's case.'" *Berckeley Inv. Grp., Ltd.*, 455 F.3d at 201 (quoting *Catrett*, 477 U.S. at 322).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by … citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). A party asserting a fact cannot be or is genuinely disputed may also support such assertion by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). In its evaluation of whether there is a genuine issue of material fact remaining in this matter, the Court "draw[s] all inferences in favor of the non-moving party." *Berckeley Inv. Grp., Ltd.*, 455 F.3d at 201.

## III.   <u>Discussion</u>[4]

Absolute argues that it is entitled to summary judgment because Papariello has failed to produce any evidence that supports his allegations of false/misleading representations or use of unfair/unconscionable means to collect a debt, and because it has produced evidence showing that the debt at issue was in fact Papariello's debt.   In response, Papariello challenges Absolute's evidence.   He specifically takes exception to three purported affidavits (hereinafter referred to as "the declarations") relied on by Absolute in preparing its concise statement of material facts.   He argues that the declarations were made without personal knowledge, and that they and the documentary evidence accompanying them should be afforded no weight in the Court's evaluation of the instant motion.[5]

As indicated *supra*, Section II (Standard of Review), it is initially incumbent on the movant for summary judgment to show there is no genuine issue of material fact for trial.   *Catrett*, 477 U.S. at 323.   Absolute accordingly argues there are no genuine issues of material fact remaining in this case, *i.e.*, a "fair-minded jury" could not "return a verdict for [Papariello] on the evidence

---

[4]     The Court exercises jurisdiction over Papariello's FDCPA claims pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.   The Court has an "independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."   *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)).   Because Papariello has alleged that Absolute's conduct "has damaged and continues to severely damage [his] personal credit rating" (Docket No. 1, ¶ 53), the Court is satisfied that Papariello has alleged a concrete, non-abstract, injury under *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016).   *See Pucillo v. Nat'l Credit Sys., Inc.*, 66 F.4th 634, 637-39 (7th Cir. 2023) (explaining that an adverse credit rating would suffice as an injury-in-fact).

[5]     As an initial matter, the Court observes that Papariello has not specifically countered Absolute's concise statement of material facts as required by local rule, pursuant to which any fact that is alleged in a moving party's concise statement of material facts which is claimed to be undisputed will be "deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party."   LCvR 56(E).   This rule is strictly applied in the district.   *Hill v. Barnacle*, 509 F. Supp. 3d 380, 386 (W.D. Pa. 2020).   Absolute indicated in its concise statement of material facts that the facts therein are "undisputed."   (Docket No. 47).   Therefore, Papariello's failure to comply with LCvR 56(E) is reason enough to grant Absolute's motion for summary judgment.   Nonetheless, out of an abundance of caution, the Court has considered the substance of Papariello's opposition to Absolute's motion.

presented," *Anderson*, 477 U.S. at 252, with respect to his allegations of FDCPA violations.  The FDPCA is meant to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."   15 U.S.C. § 1692(e).   Courts construe the Act broadly according to the "least sophisticated debtor" standard which "is 'lower than the standard of a reasonable debtor,' [and thereby] … 'preserves a quotient of reasonableness and presumes a basic level of understanding and willingness to read with care.'"  *Jensen v. Pressler & Pressler*, 791 F.3d 413, 418 (3d Cir. 2015) (quoting *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)); *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 298 (3d Cir. 2008) (explaining that the standard employed by courts effectuates the intent of the Act which is to "protect the gullible as well as the shrewd" (quoting *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006)).  "To prevail on an FDCPA claim, a plaintiff must prove that (1) [he] is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a debt as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014) (internal quotation marks omitted).

Absolute has not challenged the first three elements of Papariello's FDCPA claims (Docket No. 46, pg. 8); therefore, the Court assumes for purposes of deciding Absolute's motion that Papariello is a consumer, Absolute is a debt collector, and that Absolute's challenged conduct involves an attempt to collect a debt as defined by the FDCPA.  All that remains then is Papariello's allegations of FDCPA violations as articulated in Counts I through IV of his Complaint. Papariello's first three counts arise under Section 1692e, and the fourth count arises under 1692f.

Section 1692e broadly prohibits debt collectors' "use [of] any false, deceptive, or misleading representation or means in connection with the collection of any debt." Section 1692f broadly prohibits debt collectors' "use [of] unfair or unconscionable means to collect or attempt to collect any debt." Both provisions include non-exhaustive lists of conduct that falls within the broad prohibitions of those subsections. In his Complaint, Papariello specifically identified the applicable subsections relevant to his allegations as 1692e(2), 1692e(8), 1692e(10), and 1692f(1). A common thread through all of the alleged Section 1692e violations is that they involve showing Absolute made a "false representation" or failed to communicate the disputed nature of a debt. For Section 1692f(1), Papariello would have to prove that Absolute used "unfair or unconscionable means to attempt to collect the subject alleged $23,960 debt," which is not authorized by agreement or otherwise permitted by law. (Docket No. 1, ¶ 68 (citing 15 U.S.C. § 1692f(1))).[6]

---

[6]     For **Count I**, Section 1692e(2), Papariello alleged that Absolute, *inter alia*, made a false representation of the character, amount, or legal status of the alleged $23,960 debt. (Docket No. 1, ¶ 55). That is, that Absolute informed CRAs of a tradeline indicating Papariello owed $23,960 on a debt that had been opened on April 13, 2017, originally to "12 WEBBANK." (*Id.* ¶¶ 36, 38). Papariello alleged that he did not execute any agreement creating such debt, that Absolute knew or should have known the information they provided to CRAs was false, and that they nevertheless intentionally communicated such misinformation to collect the debt from Papariello. (*Id.* ¶¶ 40-41, 48, 52). For **Count II**, Section 1692e(8), Papariello repeated the fact allegations supporting Count I, that is that Absolute communicated consumer credit information it knew or should have known was false. (Docket No. 1, ¶ 58). And he alleged that he disputed the debt but it was "not … deleted from his consumer reports." (*Id.* ¶ 42). For **Count III**, Section 1692e(10), Papariello alleged that Absolute falsely represented to CRAs that he owed the debt to attempt to collect the debt from him. (Docket No. 1, ¶ 41). And for **Count IV**, Section 1692f(1), Papariello alleged that Absolute used  "unfair or unconscionable means to attempt to collect the subject alleged $23,960 debt," which is not authorized by agreement or otherwise permitted by law. (Docket No. 1, ¶ 68 (citing 15 U.S.C. § 1692f(1))). To that end, Papariello alleged that he had not "executed any agreement that created an alleged debt of $23,960 with … 12 WEBBANK" that would be due to Absolute. (*Id.* ¶¶ 47-48).

Regarding Count IV, the Court notes that some courts have rejected allegations arising under Section 1692f if they are duplicative of claims arising under Section 1692e. *Bermudez v. Diversified Consultants Inc.*, No. CV 18-2004, 2019 WL 415569, at *5 (E.D. Pa. Feb. 1, 2019); *Genova v. IC Sys., Inc.*, No. CV 16-5621, 2017 WL 2289289, at *6-7 (D.N.J. May 25, 2017). In this matter, the Court need not decide whether a claim brought pursuant to Section 1692f, without an independent factual basis, should be dismissed on account of it being duplicative of a claim or claims brought pursuant to Section 1692e.

To dispute Papariello's claims, Absolute submitted evidence to show that it did not falsely represent the debt.  With the declarations and documentary exhibits attached thereto, Absolute presented an account of facts in this case wherein Papariello initiated a loan application through the Prosper marketplace platform, which offers loans originated and funded by WebBank, a Utah chartered industrial bank.  (Docket No. 47, ¶¶ 4, 5 (citing Exhibit A, ¶¶ 2, 3)).  Allyson Bryant, the Vice President of Product Management for Prosper Marketplace, Inc. ("PMI") offered in support thereof her declaration that "[a]ll loans offered through" the Prosper marketplace platform "are originated and funded by WebBank" and that on "November 13, 2015 … Papariello … initiated the process to apply for a loan … by electronically agreeing to the terms." (*Id.* (citing Exhibit A, ¶¶ 2, 3)).  Papariello thereafter authorized execution in the Borrower Registration Agreement.  (*Id.* ¶ 10 (citing Exhibit A-1, ¶ 25; Exhibit A, ¶ 6; and Exhibit A-3)).  Accordingly, on November 20, 2015, WebBank originated a loan for $25,000 and Papariello received a sum of $23,750 (the original amount minus an origination fee).  (*Id.* ¶¶ 21-22 (citing Exhibit B, ¶ 7; Exhibit A-2; Exhibit B, ¶ 8)).  Niloy Bhattacharyya, Vice President of Operations & Collections for PMI, declared that "[a] Truth in Lending Disclosure Statement dated November 19, 2015, provided the terms of the Loan" and therein WebBank was identified as the lender and Papariello as the borrower for an amount of $23,750.  (Docket No. 51, Exhibit B, ¶ 7; Exhibit A-2).

After Papariello took out the loan, he stopped making payments and, eventually, his loan was included in a batch of bad debts purchased from Prosper by Absolute.  (Docket No. 51, Exhibits B-7, B-8).  Before the change in ownership, Prosper sent Papariello an email titled "Final Notice-Response Required" wherein Prosper indicated that he had missed the November 2016 payment and that the loan would possibly be "charged off as a bad debt."  (Docket No. 47, ¶ 28

(citing Exhibit B, ¶ 10; Exhibit B-5)).[7]  Papariello was later notified by email that the debt would change ownership and, on April 14, 2017, the sale of Papariello's $23,960.15 remaining balance to Absolute was confirmed by email.  (*Id.* ¶¶ 30-33 (citing Exhibit B, ¶ 11; Exhibit B-6)).  In that email, Prosper also notified Papariello that the debt would "no longer be serviced by Prosper." (Docket No. 51, Exhibit B-6).  A Bill of Sale dated May 8, 2017, and effective April 13, 2017, for a portfolio of defaulted accounts—including the Papariello debt—is included in the record at Exhibits B-7 and B-8 (Docket No. 51), as is a Certificate of Loan Sale executed by the President of WebBank.  (Docket No. 51, Exhibit B-9).  In September 2020, Absolute reported Papariello's account and outstanding balance.  (Docket No. 47, ¶¶ 54-55).  Once Papariello saw the debt on Credit Karma and requested verification with Experian, the latter notified Absolute.  (*Id.* ¶¶ 56-57; 63 (citing Exhibit C, ¶ 8; Exhibit C-1).  Absolute thereafter caused the Papariello account to be marked as disputed as of December 10, 2020.  (*Id.*  ¶ 79 (citing Exhibit C, ¶ 18)).

Papariello urges the Court not to afford any weight to the evidence proffered by Absolute in support of its motion for summary judgment.  *See* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact *cannot be presented in a form that would be admissible in evidence*." (emphasis added)).  Ultimately, the Court is unpersuaded by Papariello's objections to Absolute's evidence.

Papariello's objection to the declaration offered by Ms. Bryant is that it was not made on personal knowledge or asserted to be so, and that Ms. Bryant has not identified herself as the custodian of records attached thereto to authenticate them (Exhibits A-1, A-2, and A-3).  Papariello argues that Absolute must establish a foundation for the documents attached to Ms. Bryant's

---

[7]      The email reads: "Dear Vito, Your loan 505173 is delinquent and in jeopardy of being charged off as a bad debt…. Your loan will also be charged off as a bad debt 120 days after your missed due date listed below."  (Docket No. 51, Exhibit B-5).

declaration by providing an affidavit signed by the custodian of records or someone qualified to speak from personal knowledge.  He argues that Ms. Bryant's statement that she is "familiar with the business practices … records and recordkeeping procedures used by PMI" and its subsidiary (Prosper) (Docket No. 51, Exhibit A, ¶ 1) fails to show personal knowledge and competency to testify as a witness at trial.  Papariello further argues that Bryant's purported affidavit (*id.* (titled "Affidavit of Allyson Bryant")) is, at best, merely a declaration under California state law with her declaration under penalty of perjury being under the laws of California and not the United States.  Papariello asserts the same objections with respect to the declaration offered by Mr. Bhattacharyya (not based on personal knowledge, failed to indicate he is custodian of records for Exhibits B-1 through B-9, no foundation for such exhibits, purported affidavit is merely a declaration under California law.  With respect to Ms. Johnson, Papariello argues her affidavit was not based on personal knowledge, and she is not the custodian of records to authenticate Exhibits C-1 and C-2.

Under the Federal Rules of Civil Procedure, an affidavit or declaration that is submitted to support/oppose a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  *Robinson v. UPMC Presbyterian Shadyside*, No. CV 22-29, 2023 WL 5937254, at *1 (W.D. Pa. Sept. 12, 2023) (citing Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.")).  A "formal affidavit" is not required, and a certification is an acceptable substitute for an affidavit where it is "subscribed in proper form as true under penalty of perjury" in accordance with 28 U.S.C. § 1746.  *Id.* (quoting *United States ex rel. Doe v. Heart Sol.*, PC, 923 F.3d 308, 315 (3d Cir. 2019)).  Section 1746 allows for certifications that are subscribed to as true

under penalty of perjury, and dated, "in substantially the following form" if executed within the United States: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).  (Signature)."

Pursuant to that standard, the Court has determined that the declarations of Ms. Bryant, Mr. Bhattacharyya, and Ms. Johnson, may be relied on at summary judgment.  Papariello makes far too much of the absence of specific words from the declarations.  While an affidavit or declaration "*can* explicitly state that it is based on 'personal knowledge,' there is no requirement for a set of magic words."  *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 529-30 (5th Cir. 2005).  It is enough to show personal knowledge that the matters discussed in the declarant's statement "would, in fact, be within the sphere of [the declarant's] own knowledge."  *Herbert v. Pouya*, No. 2:20-CV-1413-NR, 2021 WL 1737463, at *4 (W.D. Pa. May 3, 2021).  Ms. Bryant declared that she is "familiar with the business practices, books, records and recordkeeping procedures used by PMI." (Docket No. 51, Exhibit A, ¶ 1).  Mr. Bhattacharyya declared that he is "familiar with the business practices, books, records and recordkeeping procedures" of the same.  (*Id.*, Exhibit B, ¶ 1).  And Ms. Johnson declared that she is "familiar with [Absolute's] processes, procedures, books, records, recordkeeping procedures and its credit reporting practices."  (*Id.*, Exhibit C, ¶ 1).  Though the declarants did not reference "personal knowledge," they certainly indicated their familiarity with the information addressed in their declarations in a manner sufficient for this Court to treat them as qualified witnesses.[8]

---

[8]    Business records such as the ones described by the declarants in this matter must be authenticated by "custodian" of the record or any other "qualified witness," Fed. R. Evid. 803(6), who can testify "that it was the 'regular practice' of the business to make and keep the business record."  *Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 777 (7th Cir. 2006).  Courts in the Third Circuit "broadly interpret[] the term, 'qualified witness'; to be qualified, a witness only needs to 'have familiarity with the record-keeping system' or 'understand the system.'"  *United States v. Muhammad*, 512 F. App'x 154, 159-60 (3d Cir. 2013) (citing *United States v. Console,* 13 F.3d 641, 657 (3d Cir. 1993)).

Papariello has also argued that the Court should afford two of the three declarations no weight because they are not sworn to under penalty of perjury as required by Section 1746.[9] However, the Court is satisfied with the attestations of the declarants in this matter.  Ms. Bryant and Mr. Bhattacharyya "declare[d] under penalty of perjury of the laws of the State of California that [their declarations were] true and correct."  (Docket No. 51, Exhibits A and B).  There is no reason for the Court to find that such a declaration is not substantially compliant with Section 1746.  Under California law, "every person who … declares … under penalty of perjury in any of the cases in which the … declarations … is permitted by law of the State of California under penalty of perjury and willfully states as true any material matter which he or she knows to be false, is guilty of perjury."  Cal. Penal Code § 118(a).  The federal prohibition of perjury likewise penalizes anyone who "in any declaration … under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true."  18 U.S.C. § 1621(2).  Thus, the Court is satisfied that Ms. Bryant and Mr. Bhattacharyya's declarations substantially comply with the requirements of Section 1746 with respect to having been made under penalty of perjury.[10]  For this and the foregoing reasons, the

---

[9]     Ms. Johnson's statement was made under oath and notarized by a public notary authorized in the state of Minnesota.  (Docket No. 51, Exhibit C).

[10]     The Court further notes that even if it did give Absolute's evidence no weight, Papariello has failed to show the Court what evidence he would rely on to carry his burden of proof to show violations of provisions of the FDCPA at trial.  And, as discussed *supra*, Section II (Standard of Review), at summary judgment it is no longer enough for Papariello to *allege* such misbehavior; rather, he must now identify the evidence he would present to a factfinder to make his case.  *Catrett*, 477 U.S. at 323.  *See Bassett v. I.C. Sys., Inc.*, 715 F. Supp. 2d 803, 810 (N.D. Ill. 2010) ("Because Bassett has failed to set forth any evidence to support this bare allegation, he has failed to raise an issue of fact for trial.  Thus, the Court grants I.C. System's summary judgment motion as to Bassett's Section 1692e(5) claim.").

Court has decided that Absolute has shown there are no genuine issues of material fact for trial; therefore, the Court will grant Absolute's motion for summary judgment.[11]

Having decided to grant Absolute's summary judgment motion, the final issue the Court must address in this matter is Absolute's request for attorney fees pursuant to 15 U.S.C. § 1692k(a)(3). As a general matter, "each party in a litigation bears its own attorneys' fees and costs, unless a statute or contract provides otherwise." *Tsouli-Moufid v. Credit Control, LLC*, No. CV 19-5400, 2020 WL 6275000, at *2 (E.D. Pa. Oct. 26, 2020) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252 (2010)). Section 1692k(a)(3), provides that "[o]n a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." In this case, Absolute has suggested but not mounted a strong argument that Papariello brought this claim in bad faith or to harass. Accordingly, the parties will bear their own costs.

IV.  **Conclusion**

Based on the foregoing, Absolute's motion for summary judgment is **granted**. An Order consistent with this Memorandum Opinion follows.

> *s/ W. Scott Hardy*
> W. Scott Hardy
> United States District Judge

Dated:          February 20th, 2024

Cc/ecf:          All counsel of record

---

[11] The Court will not, as Absolute has requested, make a "finding that Plaintiff is the owner of the defaultd [sic] account and the reported amount of the debt is correct" (Docket No. 45) as that is beyond the scope of the Court's inquiry into whether Papariello should be permitted to pursue his FDCPA claims at a trial.